UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-                                                  Case number 03-72258
                                                        Honorable Julian Abele Cook, Jr.

CITY OF DETROIT, MICHIGAN
and the DETROIT POLICE DEPARTMENT,

    Defendants.

ORDER

This civil rights action - now in its seventh year - involves an ongoing effort to enforce and implement two Consent Judgments that were agreed upon by the City of Detroit ("City") and the Department of Justice ("DOJ"). These Consent Judgments arose in response to accusations by the DOJ that the City, through its Police Department ("DPD"), had engaged in a pattern or practice of (1) using unlawful levels of force in its arrests and detentions, and (2) providing unconstitutional or otherwise unlawful living conditions to prisoners who had been confined in its holding cells.

On the same day that the Consent Judgments were entered, the Court appointed Sheryl L. Robinson (now known as Sheryl Robinson Wood), assisted by Kroll, Inc.,[1] to serve as the independent federal monitor in this case. On July 23, 2009, the Court accepted the resignation of

---

[1] Over the course of her appointment, Robinson Wood was initially employed as an attorney for Kroll, Inc., and, thereafter, for Saul Ewing, LLP, and Venable, LLP. All three entities will be referred to hereinafter collectively as "the Firms."

1

Robinson Wood from her position as the independent federal monitor following its review of documents *in camera* which led it to conclude that she "had engaged in conduct which was totally inconsistent with the terms and conditions of the two Consent Judgments . . . ." (July 24, 2009 Order, ECF No. 406, at 1-2). The conduct to which the Court had alluded included "undisclosed communications, as well as meetings of a personal nature, with the former City of Detroit Mayor Kwame Kilpatrick during the term of the Consent Judgments," as well as "inappropriate discussions with [Kilpatrick] about this lawsuit." (*Id.*).

The City has now filed a motion in which it requests that the Court impose sanctions upon Robinson Wood and the Firms in the form of a disgorgement of all the payments - totaling $10,049,493.33 - that the City made during the six years prior to her resignation. Thereafter, the DOJ, as the sole Plaintiff in this litigation, filed a response in which it generally supported the City's request. However, the DOJ submits that the requested disgorgement should be limited only to the portion of the payments that is attributable to Robinson Wood. It should also be noted that the Firms and Robinson Wood - although they are not parties to the present litigation - have filed unsolicited responses to the currently pending motion in which they vigorously oppose the City's right to pursue and obtain - as well as the authority of the Court to grant - the requested relief.

A reading of the City's motion reveals that it has attempted to inject what is, in practical effect, an entirely new cause of action (i.e., breach of contract) into this long-running civil rights case. Yet, in so doing, it has bypassed the basic procedural requirement that an aggrieved in a federal civil action under these circumstances must initiate; namely, the filing of a complaint pursuant to Federal Rule of Civil Procedure 3. The gravamen of the City's grievance is that it did not get what it paid for, as evidenced by the following statement: "The City of Detroit and its citizens paid the

2

Monitor more than $10 million, and in return, Kroll and [Robinson] Wood have managed to cast doubt on the judicial process and its own performance irrespective of merit." (Defs.' Mot. for Sanctions at 3). Clearly, the agreement between the City and the independent federal monitor contemplated that she and her monitoring team would faithfully perform their duties - and, in return, the City would pay the monitoring team for its services - pursuant to the terms and the spirit of the Consent Judgments. To the extent that (1) the Consent Judgments[2] and the affirmative representations of the monitoring team[3] created an implicit contractual obligation that every member of the monitoring team, including Robinson Wood, would be neutral, independent, and bias-free agents, and (2) Robinson Wood violated the spirit of this commitment, the City contends that it did not receive the benefit of its bargain. Thus, the City's motion is based on the principles of contract law - a matter that is distinct and separate from the now-pending civil rights litigation before this Court.

Moreover, although the City's motion bears all of the hallmarks of a breach of contract claim, it is important to note that the individuals and/or entities who should properly be identified

---

[2] *See* Consent Judgment - Use of Force and Arrest and Witness Detention, Docket No. 22, at ¶ X.A.124 ("The DOJ and the City shall select a Monitor with law enforcement experience, a reputation for integrity and an absence of bias, including any appearance of bias, for or against the DOJ, the City or the DPD, who shall review and report on the City and the DPD's implementation of this Agreement . . . ."); Consent Judgment - Conditions of Confinement, Docket No. 23, at ¶ XVII.A.79 ("The DOJ and the City shall select a Monitor with corrections experience, a reputation for integrity and an absence of bias, including any appearance of bias, for or against the DOJ, the City or the DPD, who shall review and report on the City and the DPD's implementation of this Agreement . . . .").

[3] *See, e.g.*, Statement of Qualifications, Defs.' Mot. for Sanctions, Ex. B. ("[S]uccess for the Monitor depends not on a sophisticated investigative strategy, the creation of oversight protocols, or on the creation of new innovative policing strategies. Rather the success of the Independent Monitor will be measured by its ability to . . . [e]nsure all parties and the public that the Independent Monitor's oversight is truly independent and unbiased.").

as defendants in such a claim are not parties to this civil rights lawsuit. Arguably, if the City desires to pursue its claim against Robinson Wood and the Firms, it should commence a lawsuit with all of the proper parties in their proper roles by filing a complaint to that effect, Fed. R. Civ. P. 3. ("A civil action is commenced by filing a complaint with the court."), rather than attempting to append - by motion - a breach of contract action onto the existing civil rights litigation.

Not only would the injection of such a claim into this lawsuit be procedurally improper, but it would also raise a host of practical issues that are of serious concern to the Court. An evaluation and determination of the present motion would necessitate extensive discovery, briefing, and argument. For example, the Firms have asserted in their unsolicited responses that, if the Court gave serious consideration to the City's pending motion, "discovery [would be] necessary to evaluate [Robinson] Wood's service, the services provided by other providers and contractors, the nature and duration of the 'communications,' 'meetings,' and 'discussions' between [Robinson] Wood and Mr. Kilpatrick, the 'text messages,' the culpability of the City, and other pertinent factors." (Non-Parties Saul Ewing & Venable's Resp. to Defs.' Mot. for Sanctions at 29; *see also* United States' Resp. to the City's Mot. for Sanctions at 10-11 ("[P]rior to hearing oral argument or deciding this motion, we recommend that the Court set a briefing schedule for all parties in interest and, if requested by any party, an evidentiary hearing where Robinson Wood has both an opportunity to be heard and to be examined.")). Thus, the City's motion contemplates the relitigation of six of the seven years of this civil rights action - but with the scrutiny being shifted from the Defendants (the City of Detroit and its Police Department) to persons and entities who are not even parties to the present case. Such a change in focus would not only be improper, but it would also be severely detrimental to the progress - albeit extremely slow - of this action. *Cf. City of Bangor v. Citizen Comm'ns Co.*,

4

No. 02-183-B-S, 2007 WL 4233094 & 2007 WL 1557426 (D. Me. Nov. 28 & May 25, 2007), *aff'd*, 532 F.3d 70 (1st Cir. 2008) (dismissing without prejudice supplemental third-party complaints and third- and fourth-party motions for judgment that, in the opinion of the court, "would be best pursued as an entirely new case," where the initial case resulted in a consent decree for environmental remediation and the supplemental complaints were contribution claims against third-party defendants).

>In *City of Bangor*, the court noted that:
>
>>[I]t would seem that the already lengthy docket on this matter should remain open solely to deal with issues surrounding the implementation and enforcement of the Consent Decree. To the extent that Citizens' supplemental complaints seek only money damages and will clearly require extensive motion practice, including in all likelihood a new round of motions to dismiss, as well as discovery, it would seem that these matters should occupy their own separate docket.

*City of Bangor*, 2007 WL 1557426, at *10. The third-party plaintiff - assuming that it wished to continue to pursue its contribution claims - was directed to file its complaints as a new and independent case. 2007 WL 4233094, at *1-2. In affirming this disposition by the trial court, the First Circuit Court of Appeals noted that:

>A district court enjoys inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Here, the district court decided that the entire subject matter to which the motions for judgment applied would be heard in a new case, where [the third-party plaintiff's] opposing motion to file supplemental claims for contribution would also be considered. Appellants have not shown they would suffer the "plain legal prejudice" that parties seeking to challenge a dismissal without prejudice must demonstrate.

*City of Bangor*, 532 F.3d at 99 (citations omitted). Here, as in *City of Bangor*, the instant litigation should and must remain focused on the implementation and enforcement of the Consent Judgments. The factually and legally distinct and complicated matters that have been raised by the City through

5

its motion[4] can be and should be the subject of an independent case with the relevant persons and entities properly joined as parties.

Furthermore, the Court has very serious reservations regarding its authority to order - and to enforce - the relief that the City seeks to obtain in its motion. Neither Robinson Wood nor the Firms are parties to this case. Although many courts have addressed the issue of whether the inherent authority of a court to sanction litigants extends to non-parties, no clear rule has emerged, especially with respect to non-parties who did not violate any specific court order. *See, e.g.*, *In re So. Mich. Assocs.*, 175 B.R. 976, 981-87 (Bankr. N.D. Ill. 1994) (reviewing conflicting decisions regarding whether district courts' inherent authority to impose sanctions extends to non-parties, and holding that "as a matter of law [the court] is unable to impose sanctions under its inherent authority against . . . a non-party expert witness who has not appeared before this court nor violated a court order). *Compare Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514, 2010 WL 2730748, at *5-6 (E.D.N.Y. July 6, 2010) (although non-parties are ordinarily not subject to court's inherent authority to impose sanctions, ordering sanctions against non-party because, "as the majority shareholder, chief executive, and only person affiliated with [the defendant] to have a substantive role in this litigation, [purported non-party] is [the defendant]"), *with Feldman v. Davidson*, 2009 WL 995473, at *2 (S.D. Fla. Apr. 13, 2009) (citation omitted) ("The court's inherent power to sanction includes sanctioning non-parties for bad faith conduct. However, additional safeguards may be warranted when a non-party is being sanctioned.").

---

[4]Moreover, the Court notes that the City's motion arguably raises issues of first impression. Although the parties and non-parties herein have cited cases involving bankruptcy examiners, special masters, agents, and attorneys, all of these positions and their attendant obligations and responsibilities are distinguishable from that of a federal monitor. Thus, none of these cases offer any realistic guidance on the proper resolution of this issue.

If the Court entertained the City's present motion - despite its very serious doubts as to the propriety of doing so - it would run the risk of bogging down what has been a forward looking action that has been focused on continually improving the DPD's compliance with the Consent Judgments with a backward-looking dispute between the City and the now-former independent monitor and her team. The Court notes that the DPD has made significant progress in coming into compliance with the mandates within the Consent Judgments during the past year. Thus, even if the Court did have the authority to address the concerns of the City - as reflected in its currently pending motion - appending the present claim to the instant litigation could have the unintended consequence of taking the attention of the parties and the Court away from the central goal of addressing the civil rights concerns of its citizenry and, in so doing, even reversing the progress that has been made, albeit slowly.

The Court understands the desire of the City to pursue the relief that it seeks to obtain in this motion. However, the Court has determined that it would be manifestly improper to evaluate and rule on the City's motion in its present posture. Therefore, the Court denies the pending motion, but does so without prejudice to the City's ability to file a separate civil case in which it would seek to recapture monies from those persons and/or entities to whom funds were extended.

In light of the Court's disposition of the City's motion, the following motions are denied for reasons of mootness: Saul Ewing and Venable's motion for leave to file excess pages (ECF No. 498), the City's motion to extend the time to file reply briefs (ECF No. 511), the City's ex parte motion for leave to file excess pages (ECF No. 514), and Kroll's motion for leave to file a supplemental brief (ECF No. 518).

IT IS SO ORDERED.


Dated:   December 21, 2010              s/Julian Abele Cook, Jr.
         Detroit, Michigan              JULIAN ABELE COOK, JR.
                                        United States District Court Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on December 21, 2010.

                                        s/ Kay Doaks
                                        Case Manager