UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

    -vs-                              Case No. 03-72258
                                     Honorable Julian Abele Cook, Jr.

CITY OF DETROIT, MICHIGAN
and the DETROIT POLICE DEPARTMENT,

       Defendants.

ORDER

On July 18, 2003, the City of Detroit ("City") consented to the entry of two Consent Judgments with the Department of Justice ("DOJ") in response to allegations by numerous citizens that its Police Department ("DPD") had engaged in a continuous pattern or practice of (1) using unlawful levels of force in achieving arrests and detentions, and (2) providing unconstitutional or otherwise unlawful living conditions to those persons who were confined in the DPD's holding cells. Currently before the Court is the City's motion to suspend monitoring of compliant provisions of the Use of Force Judgment.

I.

Inasmuch as there have been several recent changes relating to the Monitor's assessment of the DPD's compliance efforts, a short review of these changes is appropriate. For the vast majority of the life of these two Consent Judgments, the Monitor conducted a quarterly assessment of the DPD's compliance with each of the Consent Judgments' requirements, regardless of whether the requirements had been previously considered in or out of compliance. Recently, however, the Court agreed to reduce the total number of in-compliance paragraphs that are audited each quarter. The

end result is that approximately 37 paragraphs - selected at random by the Monitor - are not subject to review. This procedural change has been implemented for two reasons: First, it provides the DPD with a greater level of independence, and second, it allows the Court to assess the DPD's ability to sustain compliance while not directly under the microscope of the Monitor. The purpose of this procedure - which is to inspire confidence in the DPD's ability to operate independently over the long term - implicates the very core of the Consent Judgments and is, accordingly, of great importance to the Court. To date, this process has been in place for less than 6 months.

Turning to the "Conditions of Confinement" Consent Judgment, the City has recently taken steps to close all of its holding cells and to transfer the detainees therein to the Michigan Department of Corrections ("MDOC") at its Mound Road facility. As a result, the Monitor concluded in his most recent Quarterly Report that the City had reached full compliance with the requirements of the "Conditions of Confinement" Consent Judgment. The parties are now in the process of closing out this aspect of their respective obligations under this Consent Judgment.

Finally, the Court again expressed its frustration during its most recent status conference with the City's continued failure to achieve full compliance with the "Use of Force" Consent Judgment and directed the Monitor to increase the frequency of his visits to the City in order to assist it in reaching full compliance. *See* Order, December 19, 2013, ECF No. 671.

As a result of these recent changes, the Monitor has now focused his attention on the requirements of the "Use of Force" Consent Judgment. Although the monitoring of non-compliant paragraphs has been intensified, the monitoring of the compliant paragraphs has been lessened.

II.

In its motion, the City requests the Court to suspend its monitoring of the 86 paragraphs of the "Use of Force" Consent Judgment that have been in compliance for two or more consecutive years. The plain terms of the Consent Judgment, however, do not contemplate this suggested piecemeal approach to compliance. Indeed, the parties agreed that "the [a]greement shall terminate . . . if the DPD and the City have substantially complied with *each* of the provisions of this Agreement and have maintained substantial compliance for at least two years." Use of Force Consent Judgment, ECF No. 22 at ¶148 (emphasis added). In fact, the City acknowledges that "the Consent Judgment [contemplates] termination of the entire Judgment upon two years of sustained compliance with all paragraphs . . . ." Def's. Mot. 3, ECF No. 672. Finding no support for relief within the document that has governed this case for over 10 years, the City opts to frame its request as a modification of the Consent Judgment based upon the notion that "adequate safeguards . . . are now in place to ensure that the City will maintain its compliance . . . ." *Id.* As discussed more fully below, the City has failed to sufficiently set forth any factual or legal circumstances that would warrant the modification of this "Use of Force" Consent Judgment.

Pursuant to Federal Rule of Civil Procedure 60(b), a court may modify a consent judgment when it has been satisfied or "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "This rule does not allow modification simply when it is no longer *convenient* to live with the terms of a consent decree, but solely when there is a *significant* change either in factual conditions or in the law." *Northridge Church v. Charter Tp. Of Plymouth*, 647 F.3d 606, 613 (6th Cir. 2011) (internal quotes omitted) (emphasis added) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383-84 (1992)). The party seeking the modification "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383.

Examples of circumstances when modification of a consent decree may be appropriate include one or more of the following; namely, (1) compliance is made substantially more onerous due to changed factual conditions; (2) the decree proves to be unworkable due to unforeseen obstacles; or (3) enforcement without modification would be detrimental to the public interest. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992). The Court notes that "'modification of a consent decree is an extraordinary remedy that should not be undertaken lightly.'" *Northridge Church*, 647 F.3d at 614 (citing *East Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011)).

Here, the City contends that the DPD "has changed significantly since the Consent Judgment began." Def. Mot. 5, ECF No. 672. The suggested change by the City is claimed to be an improvement in the DPD's level of compliance with the Consent Judgment rather than some change in the factual conditions. In other words, the City's motion is little more than a reiteration of its oft-repeated request for the Court to absolve it of its responsibility to follow through with the original agreement. As the Court has repeatedly told the parties, the goal posts will not be changed mid-stream simply because the City has not yet satisfied its level of compliance mandated under the Consent Judgment. Indeed, the City has failed to direct the Court to any authority that would allow the modification of a consent judgment where the only "significant change in circumstances" is the satisfaction of a greater portion of the party's original obligation. The Court finds this line of argument to be particularly unpersuasive where, as here, the Consent Judgment implicates the protection of basic civil rights of the citizens within this community.

Even assuming, *arguendo,* that the Court was inclined to grant the City's request, an examination of the broader context surrounding the DPD's institutional structure indicates that now is not the appropriate time to reduce the role of the Monitor. The purpose of the two-year

4

sustainability period required under the Consent Judgment is to ensure that the DPD has institutionalized the reforms such that they have become ingrained in the culture of the Department. An important component of this process is the creation of a strong mechanism for internal investigation and review to replace the external oversight of the Monitor. As the City has acknowledged, "[t]he Consent Judgment provisions addressing documentation, investigation and review of use of force incidents have presented a challenge for the Department." Def's. Mot. 6. In fact, almost half of these requirements remain out of compliance as of this day.[1] *Id.* Suffice it to say that the City's admission does not inspire confidence in the Court that the DPD currently has the capacity to proactively discover and remedy the very abuses which prompted the filing of this case over 10 years ago.

Another vital component of institutionalized reform is the preservation of a stable group of executive level personnel to oversee the transition. Here, too, the circumstances do not suggest that now is the time for the Court to reduce the Monitor's role. The DPD has been in a state of turmoil for much of the period of the Consent Judgment and once again has entered a new stage of transition at every level of its hierarchy. Previous police chiefs were appointed by and answered to the elected mayor, who shared oversight of the DPD with the Board of Police Commissioners. The current structure has seen the removal of the mayor and the Board from any oversight of the DPD and placement of that authority solely with the Emergency Manager. At the next level, the current police chief - who represents the fifth chief in five years - has been in office less than seven months. Since

---

[1]The City now appears to quibble with the Monitor's method of assessing the level of compliance with these paragraphs. The Court will remind the City that the burden is on it - not the Monitor - to demonstrate that it is in substantial compliance with each of the Consent Judgment's paragraphs. Use of Force Consent Judgment ¶ 148, ECF No. 22. Until it does so, the Court will consider these paragraphs to remain out of compliance.

his appointment on July 1, 2013, he has overhauled his entire command staff, including many officers who oversee various aspects of compliance with the "Use of Force" Consent Judgment. Recent organizational change has even filtered down below the executive level, where, as evidenced by the DPD's 2014 Plan of Action, the Chief anticipates a significant degree of "strategic restructuring" in a number of different internal units. All of these changes occurred after the Monitor issued its most recent Quarterly Report. As a result, the Court has not received any indication of the effect of these changes - if any - on the sustainability of the reforms.

The City asserts that the DPD's gains in its compliance with the identified Consent Judgment are sustainable. The Court certainly hopes so. But without a strong internal review system or a stable group of personnel who will oversee the reforms, the Court will neither modify the Consent Judgment nor reduce the presence of the Monitor - one of the few constants over the past few years.

For the reasons that have been discussed above, the City's motion to suspend monitoring of compliant provisions of the "Use of Force" Consent Judgment (ECF No. 672) is denied.

IT IS SO ORDERED.

Date: January 16, 2014                          s/Julian Abele Cook, Jr.
                                                JULIAN ABELE COOK, JR.
                                                U.S. District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 16, 2014.


                                                s/ Kay Doaks
                                                Case Manager

6